THE CITY OF COLLINSVILLE, Plaintiff-Appellee, *v.* JAMES SEIBER, Defendant-Appellant.

Fifth District   No. 79-275

Opinion filed April 1, 1980.

William C. Evers, III, of Collinsville, for appellant.

Thomas M. Welch, of Collinsville, for appellee.

Mme JUSTICE SPOMER delivered the opinion of the court:

The plaintiff, City of Collinsville, filed complaints against the defendant, James Seiber, alleging that he committed a nuisance at two separate locations (his residence property and his business property) on August 1, 1978, in that he "permitted or maintained an unsightly yard or premises where there is an accumulation or deposit of vehicles, equipment, junk, wrecked or disabled automobiles, trucks, material, waste and earth" in violation of paragraph 9.16.140 of its Municipal Code. The case was tried before a jury, defendant was found guilty, and a fine of $250 was imposed on each complaint. Judgment was entered on the verdicts.

Defendant appeals, alleging (1) that the ordinance was unconstitutional; (2) that the evidence failed to prove a nuisance; (3) that he was not given proper opportunity to abate the nuisance; and (4) that he was the subject of selective prosecution. We affirm the judgment.

The city ordinances in issue were promulgated pursuant to powers authorized by sections 1—2—1 and 11—60—2 of the Municipal Code (Ill. Rev. Stat. 1977, ch. 24, pars. 1—2—1 and 11—60—2), and in pertinent part provide:

"1.20.010 General penalty. A. Any person violating any of the provisions or failing to comply with any of the mandatory requirements of the ordinances of the city is guilty of a misdemeanor. Except in cases where a different punishment is prescribed by any ordinance of the city, any person convicted of a misdemeanor under the ordinances of Collinsville shall be punished by a fine of not more than five hundred dollars.

\* \* \*

Division 9.16 Nuisances

9.16.010. It is hereby declared to be a nuisance for any person within the limits of the city to commit any of the following described acts:

\* \* \*

9.16.140. To permit or maintain an unsightly yard or premises where there is an accumulation or deposit of any vehicle, equipment, junk, wrecked or disabled automobile, trucks, material of any nature, waste or earth.

\* \* \*

9.16.190. Abatement-Notice Required. Whenever the Mayor or other authorized Municipal Officer finds that a nuisance or other

condition listed in this Division 9.16 exists, he shall cause to be served upon the property owner or occupant a written notice to abate the nuisance within a reasonable time after notice.

* * *

9.16-250. Fine as alternate or concurrent penalty.

In addition to or as an alternate penalty for violation of this Division 9.16, the owner or occupant may be prosecuted under the provisions of Division 1.20, Section 1.20.010 of the Collinsville Municipal Code."

At trial, the evidence disclosed that defendant operated a sanitation service in Collinsville known as Seiber's Sanitation & Hauling, which consisted of garbage and trash collection and buying and selling scrap iron, metal and similar items. He had been in business at the same location for 30 years on property that was originally zoned residential but was presently zoned commercial.

One of plaintiff's witnesses, a city police officer, testified that he went to both locations and took photographs depicting the condition of the premises on August 1, 1978, and again on August 28, 1978. All photographs were introduced in evidence, and they depicted a variety of items scattered about the premises—motor vehicles, a disabled van, a truck bed, a kitchen sink, barrels, old tires, tree limbs, weeds, twisted metal pieces, scraps of metal and iron, and other debris. The city clerk testified that he was on the property on August 1, 1978, and that he observed "garbage trucks, parts of garbage trucks, storage of iron, scraps of iron, and general debris" at one location, and "abandoned garbage trucks, high weeds, general disarray and debris at the other."

Defendant testified that all of his vehicles were registered except two. Some were used to haul various items connected with the business, and others were kept for sale, either *in toto* or as parts. He stated that all were either operational or could be made so by the addition of batteries or tires. Garbage and trash were stored on the property in containers "until such time as we have a big truck load" to take to the landfill. On cross-examination regarding the trash and debris on the ground shown in one photograph, defendant stated that the area had been cleaned up since the complaint was filed. He contends that he cannot be guilty of creating a nuisance because his business—whether denominated a junk yard or a sanitation service—is a legitimate one, and the items found on his property are actually marketable as salvage, although plaintiff refers to them as junk.

In support of his defense of selective prosecution, defendant testified that he entered into a garbage collection contract with the city in 1972, and that thereafter a dispute arose over construction of the contract,

necessitating his suing the city. He was unsuccessful in this litigation, but contends that plaintiff brought the instant suits in retaliation. Defendant called the city attorney as a witness, showing him several photographs of other property in the city which allegedly depicted conditions similar to those in the present case. The witness was unable to recall if these alleged violators had been prosecuted, but stated that "a lot of times they [landowners] will abate the nuisance before we prosecute."

In rebuttal the city introduced evidence of all the criminal complaints and notices to abate which it had filed against other individuals under the nuisance ordinance. The city clerk testified that the great majority of violations never reached the complaint stage because in most cases, after notice, the alleged nuisances were abated by the owners by informal agreement with the city. The city also introduced in evidence notices to defendant to abate the alleged nuisances here involved.

■■ Defendant first attacks the constitutionality of the ordinance on grounds that it is unreasonable, overbroad, and vague. Section 11—60—2 of the Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 11—60—2) gives authority to the city to define, prevent, and abate nuisances. As stated in 29 Ill. L. & Prac. *Nuisances* §2 (1957):

> "A nuisance is something which is offensive physically to the senses, and by such offensiveness makes life uncomfortable, but what constitutes a nuisance depends on the particular facts of each case and is not capable of exact definition. The term 'nuisance' includes everything which endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property, and such term is applied to that class of wrongs which arise from unreasonable, unwarrantable, or unlawful use by a person of his property so as to produce material annoyance, inconvenience, discomfort, or hurt from which the law will presume a consequent damage."

The legislature has also specifically delegated authority to the city to do all acts which are necessary or expedient for the promotion of health or the suppression of diseases. (Ill. Rev. Stat. 1977, ch. 24, par. 11—20—5.) Since the regulation proposed by the ordinance in question is clearly related to the public health, we find it is a permissible exercise of authority by the city. However, the court must make a further determination: Is the ordinance a reasonable exercise of the police power? This may be answered affirmatively only if the ordinance bears a reasonable and substantial relation to the public health, safety or general welfare taking into consideration its objective and all existing conditions and circumstances. (*Troy v. Village of Forest Park* (1925), 318 Ill. 340, 149 N.E. 281.) Furthermore, it must not be unduly oppressive on individuals.

*Chicago Allis Manufacturing Corp. v. Metropolitan Sanitary District* (1972), 52 Ill. 2d 320, 288 N.E.2d 436.

The reasonableness of the ordinance is a question of law for the court to decide, and it is presumptively valid. (*Greyhound Lines, Inc. v. City of Chicago* (1974), 24 Ill. App. 3d 718, 321 N.E.2d 293.) As stated in that case on page 726:

> "It must be remembered that there was a heavy burden on plaintiffs to show that the ordinance constituted arbitrary, capricious, and unreasonable municipal action; that there was no permissible interpretation which justified its adoption, or that it will not promote the general welfare of the public. [Citations.] The most important of the police powers is that of caring for the safety and health of the community. It is the policy of the law to favor such legislation. [Citation.]"

Defendant's primary argument is that his business is not, *per se*, a nuisance, and that it is impossible to conduct this kind of business in compliance with the ordinance. We disagree.

■■■ Two facts must be established to sustain the validity of the nuisance ordinance: (1) that the property either *per se* or in its manner of use is a nuisance; and (2) that the interference does not extend beyond what is necessary to correct the evil. (*City of Chicago v. The Gunning System* (1904), 114 Ill. App. 377, *affirmed* (1905), 214 Ill. 628, 73 N.E. 1035.) Junk yards have long been subject to regulation and licensing; they are not nuisances *per se*, because it is possible to operate them so as not to be offensive. (*People ex rel. Goldberg v. Busse* (1909), 240 Ill. 338, 346, 88 N.E. 831.) The purpose of the ordinance in the case at bar is not to prohibit sanitation services or junk yards in this area, but to require that all property—even that on which such businesses are operated—be maintained in a sanitary manner, ever mindful of the public health and safety. In light of the circumstances, that requirement, and the ordinance, were reasonable.

■■■ Defendant claims the ordinance is overbroad because it applies to the entire city, regardless of zoning classification, making his business virtually impossible anywhere within the city. An ordinance is overbroad if it offends the constitutional principle "that a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." (*People v. Ridens* (1974), 59 Ill. 2d 362, 370, 321 N.E.2d 264.) To determine that the ordinance represents unconstitutional exercise of the city's authority requires a real and substantial overbreadth, judged in relation to the ordinance's plainly legitimate sweep. (*Ridens*, 59 Ill. 2d 362, 372.) Trash and garbage

collection must necessarily be carried on in the vicinity of each city, including plaintiff, and such is not inherently a nuisance. However, the city has an interest in maintaining the health and cleanliness of the public, and through its police power, may reasonably regulate such accumulations and deposits as defendant has allowed on his land. Further, defendant has made no showing that he can not conduct his business without violation of the nuisance ordinance, and in fact, photographs in evidence taken subsequent to the date of the violations show a substantial abatement of the nuisance by defendant between August 1 and August 28, 1978. As the Illinois Supreme Court stated in the case of *City of Rockford v. Grayned,* "While the ordinance may be susceptible to unconstitutional application, its constitutionality does not depend on conjectured misapplication." (46 Ill. 2d 492, 494, 263 N.E.2d 866.) We believe the ordinance did not interfere with defendant beyond a point necessary to correct the evil, and we find it is not overbroad.

Defendant contends that the nuisance provisions are unconstitutionally vague, and objects that terms "unsightly" and "junk" are not defined. We agree that conduct prohibited by an ordinance must be described in terms definite enough to serve as a guide to those to whom it applies. (*Rabe v. Washington* (1972), 405 U.S. 313, 315, 31 L. Ed. 2d 258, 260, 92 S. Ct. 993, 994; *Village of Riverwoods v. Untermyer* (1977), 54 Ill. App. 3d 816, 819, 369 N.E.2d 1385.) However, the test is whether these words convey sufficient definite warning and fair notice as to the prohibited conduct in light of common understanding and practice. (*City of Chicago v. Lawrence* (1969), 42 Ill. 2d 461, 248 N.E.2d 71; *People v. Ridens* (1974), 59 Ill. 2d 362, 321 N.E.2d 264.) In the latter the supreme court said, at page 371:

> "A statute or ordinance designed to regulate many types of activities must frequently be couched in general terms. In rejecting the contention that the 'anti-noise' ordinance of the city of Rockford was impermissibly vague and upholding its validity, the United States Supreme Court said: 'Condemned to the use of words, we can never expect mathematical certainty from our language. The words of the Rockford ordinance are marked by "flexibility and reasonable breadth, rather than meticulous specificity," *Esteban v. Central Missouri State College*, 415 F.2d 1077, 1088 (CA8 1969) (Blackmun, J.) cert. denied, 398 U.S. 965, [26 L. Ed. 2d 548, 90 S. Ct. 2169] (1970), but we think it is clear what the ordinance as a whole. prohibits.' *Grayned v. City of Rockford*, 408 U.S. 104, 110, 33 L. Ed. 2d 222, 228-229, 92 S. Ct. 2294, 2300."

It is apparent in the present case that the terms used are significantly

explained in the context of the ordinance as a whole. When the entire ordinance in the case at bar is read in a sensible way, it is apparent that the finding of a nuisance is not based solely on the "unsightly" nature of the premises, nor the "junk" nature of the objects thereon, but also on the "accumulation or deposit" of the various objects on open ground, which would constitute clutter, a danger to children, and a possible breeding ground for vermin and rodents.

In other cases, such terms as "interfere with" and "hinder" (*City of Chicago v. Lawrence* (1969), 42 Ill. 2d 461, 464, 248 N.E.2d 71), "noise" and "diversion" (*City of Rockford v. Grayned* (1970), 46 Ill. 2d 492, 494, 263 N.E.2d 866), and "lewdness" (*City of Chicago v. Geraci* (1975), 30 Ill. App. 3d 699, 704, 332 N.E.2d 487) have been held sufficiently specific, in the context of the legislation. We similarly believe the instant ordinance was not impermissibly vague.

■ Defendant next contends that the evidence presented at trial did not establish a nuisance. However, we have reviewed the testimony and examined the photographs in evidence, and must reject this argument. The evidence disclosed debris and other matter scattered about defendant's premises in disarray; the jury, being the trier of fact, determined that a nuisance in fact did exist. Such finding is not against the manifest weight of the evidence.

■ The defendant argues that the city did not follow the proper abatement procedures with regard to his property. However, ordinance 9.16.250 makes it clear that the city may proceed under general penalty provisions (1.20.010) or under abatement (9.16.190). Furthermore, a defendant is not entitled to notice to abate a nuisance. (*City of Chicago v. Atwood* (1915), 269 Ill. 624, 629, 110 N.E. 127.) Therefore, the city acted within its authority in this case.

■ Defendant's final contention is that he was the subject of selective prosecution in retaliation for filing a lawsuit against the city. To invoke the defense of selective prosecution, one must prove that the selection was based on an unjustified standard such as race, religion, or some other arbitrary classification. (*Fender v. School District No. 25* (1976), 37 Ill. App. 3d 736, 743, 347 N.E.2d 270.) A defendant is entitled to a hearing on the issue if he presents facts sufficient to raise a reasonable doubt thereon; in the absence of such a showing, there is a "weighty presumption of the legality of the prosecution," and mere conscious exercise of selectivity in enforcement is not in itself a constitutional violation. *United States v. Peskin* (7th Cir. 1975), 527 F.2d 71.

The record here reveals no basis for this claim. Unlike other property owners in Collinsville, defendant failed to abate the nuisance after being given two warnings, and it was thus necessary for the city to file a formal complaint. The jury found the condition of defendant's property to

constitute a nuisance. Defendant has done no more than allege an "unjustifiable standard" for the city's decision to prosecute him, and in light of the condition of his property, no reasonable doubt as to that issue was raised. The "weighty presumption" of the legality of the prosecution therefore stands.

The judgment of the circuit court is accordingly affirmed.

KASSERMAN and HARRISON, JJ., concur.