149 Ill. App.3d 114 (1986)
498 N.E.2d 1179
EDWARD JUNKUNC et al., d/b/a General Machinery & Manufacturing, Plaintiffs-Appellants,
v.
S.J. ADVANCED TECHNOLOGY & MANUFACTURING CORPORATION et al., Defendants-Appellees.
No. 85-2346.
Illinois Appellate Court  First District (4th Division).
Opinion filed September 30, 1986.
*115 Arnstein, Gluck, Lehr, Barron & Milligan, of Chicago (Arthur L. Klein, Richard K. Wray, and Yvor E. Stoakley, of counsel), for appellants.
Monico & Pavich, of Chicago (Robert J. Pavich and Barry A. Spevack, of counsel), for appellees S.J. Advanced Technology & Manufacturing Corporation and Stephen Junkunc IV.
Anton R. Valukas, United States Attorney, of Chicago (James P. White and James T. Hynes, of counsel), for appellee The United States of America, Department of the Navy.
Judgment affirmed.
JUSTICE JOHNSON delivered the opinion of the court:
Plaintiffs, Edward Junkunc, Laddie Junkunc, and Helen Steirer, doing business as the General Machinery and Manufacturing Company (hereinafter General Machinery), brought an action against defendants, Stephen Junkunc IV and S.J. Advanced Technology and Manufacturing Corporation, in the circuit court of Cook County. Plaintiffs claimed that their process for manufacturing a type of fuel-nozzle seal for jet engines was a trade secret and that Stephen took the trade secret and used it to manufacture his own fuel-nozzle seals. Plaintiffs moved for a preliminary injunction against Stephen, ordering him to discontinue manufacturing and selling his fuel-nozzle seals. The trial court denied plaintiffs' motion. Plaintiffs appeal, contending that the trial court erred in denying their motion for a preliminary injunction.
We affirm.
The record shows that Edward and Laddie Junkunc and Helen Steirer are partners in General Machinery. Plaintiffs' manufacturing *116 plant and offices are located in Chicago. Plaintiffs manufacture, inter alia, fuel-nozzle seals for jet aircraft engines and have done so since approximately 1956. Stephen's father, Stephen Junkunc III, was plaintiffs' brother and a partner in General Machinery.
All of the seals that plaintiffs manufacture are designed to fit jet aircraft engines made by the Pratt and Whitney Aicraft Division of United Technologies, Inc. (hereinafter Pratt & Whitney). Plaintiffs based the first seals that they manufactured on a design that Pratt & Whitney developed. Plaintiffs designated those seals as the DP-1 through the DP-14.
In the late 1950's and early 1960's, plaintiffs began developing a new seal of their own. The main innovation in their new design was that the circular sealing edges on both sides of the seal were sharp, like the edge of a knife. As such, the seal could cut into the surface of the engine manifold and the fuel nozzle, creating a leak-proof seal.
Stephen's father, Stephen Junkunc III, first suggested the idea of the knife edge. Stephen's father, with Laddie Junkunc and Louis Steirer (former chief engineer of General Machinery and husband of plaintiff Helen), created, designed, and developed the manufacturing process for the knife-edge seal. Plaintiffs manufactured the first knife-edge seal in 1976 and designated it as the DP-30.
A further innovation followed. "Nitriding" is a process of case-hardening steel by impregnating it with nitrogen. (Webster's Third New International Dictionary 1530 (1981).) In 1973, after two years of research and development, plaintiffs devised a process by which they could apply the nitriding process to only the knife edges and other specific areas of each seal. Plaintiffs designated this seal, which incorporated this selective hardening process, as the DP-37. Plaintiffs claim that the manufacturing process for the DP-37 is their trade secret.
Stephen worked at General Machinery from 1959 through 1979. He began as a tool-and-die apprentice and progressed to co-foreman of the air-products department. By the time that he resigned, Stephen made dies and gauges. Stephen was also responsible for the preparation of the checklists that contained the cutting dimensions, angles and radii of the tools necessary to produce the DP-37. He acquired knowledge of all aspects of plaintiffs' seal-manufacturing business and the manufacturing process of the DP-37.
Stephen's father died in 1978 and Stephen resigned from General Machinery in 1979. The parties agree that Stephen, upon leaving General Machinery, told his uncle, Laddie Junkunc, that he intended to establish a machine shop and that they did not enter into any restrictive *117 covenants. There was conflicting testimony, however, whether Stephen told his uncle that he would manufacture seals in competition with General Machinery. Stephen formed S.J. Advanced Technology and Manufacturing Corporation within one year after leaving General Machinery's employ. Stephen's company did not operate actively until 1984, when it began manufacturing a seal comparable to the DP-14.
The United States Navy Aviation Supply Office solicited offers from both plaintiffs and Stephen for a contract to manufacture fuel-nozzle seals. In January 1985 plaintiffs learned that the Navy awarded the contract to Stephen's company. Believing that Stephen would use the information that he gained from plaintiffs to manufacture his seals, plaintiffs brought the present action.
Plaintiffs filed their complaint on April 12, 1985. They sought injunctive relief to (1) prevent Stephen from further using what plaintiffs allege to be their process in manufacturing his seals, (2) prevent him from selling the seals that he produced based on plaintiffs' process, and (3) require him to return to plaintiffs any documents containing plaintiffs' process for manufacturing the DP-37. Plaintiffs also sought $15,000 in compensatory damages in addition to costs and attorney fees. On the same day, the trial court entered a temporary restraining order preventing Stephen from disposing of or destroying any document containing the manufacturing process for the seals until it could hold a hearing on the preliminary injunction motion.
At the preliminary injunction hearing, plaintiffs claimed that their trade secret is not the design of the seal itself but, rather, the process required to manufacture the seal. Plaintiffs demonstrated how production of the DP-37 requires 58 steps, beginning with the creation of a disk from a stainless steel bar. Plaintiffs then use specially designed precision cutting tools to shape the disk. Plaintiffs claimed that the process consists of various phases and techniques that, when taken as whole, constitute their trade secret.
On July 1, 1985, the trial court denied plaintiffs' motion for a preliminary injunction and dissolved its temporary restraining order. The court found that plaintiffs failed to establish their entitlement to a preliminary injunction, specifically finding that they failed to prove the existence of a trade secret. The trial court also found no grounds on which to award damages, attorney fees, and costs. Plaintiffs appeal. The Navy has since entered this action as a necessary party.
 1 The purpose of a preliminary injunction is not to determine controverted rights or to decide controverted facts or the merits of a case. It is an extraordinary remedy, the use of which is applicable only to situations where an extreme emergency exists and serious harm *118 would result in the absence of the injunction. Buzz Barton & Associates v. Giannone (1985), 108 Ill.2d 373, 386-87, 483 N.E.2d 1271, 1277.
 2, 3 A preliminary injunction is a provisional remedy that a court grants before hearing a case on its merits to preserve the status quo. (Hydroaire, Inc. v. Sager (1981), 98 Ill. App.3d 758, 761, 424 N.E.2d 719, 722.) In general, injunctions rest on the authority of courts of equity to restrain persons within their limits of jurisdiction from doing inequitable acts to the wrong and injury of others. (Baal v. McDonald's Corp. (1981), 97 Ill. App.3d 495, 501, 422 N.E.2d 1166, 1172.) A party who seeks a preliminary injunction must establish by a preponderance of the evidence that (1) a certain and clearly ascertained right needs protection, (2) irreparable injury will occur without the injunction, (3) no adequate remedy at law exists, and (4) there is probability of success on the merits of the case. Hydroaire, Inc. v. Sager (1981), 98 Ill. App.3d 758, 761, 424 N.E.2d 719; Baal v. McDonald's Corp. (1981), 97 Ill. App.3d 495, 499, 422 N.E.2d 1166, 1172.
 4 The issuance or denial of a preliminary injunction is addressed to the trial court's sound discretion. A court of review should confine itself to a determination of whether the trial court has properly exercised its broad discretionary powers; each substantive issue should be considered only insofar as necessary to determine whether the trial court abused its discretion. A reviewing court will not disturb the findings of the trial court unless they are against the manifest weight of the evidence. Booth v. Greber (1977), 48 Ill. App.3d 213, 217-18, 363 N.E.2d 6, 9; see also American National Bank & Trust Co. v. Chicago Title & Trust Co. (1985), 134 Ill. App.3d 772, 776-77, 481 N.E.2d 71, 74.
The trial court found that (1) no certain and clearly ascertained right existed because no trade secret existed; (2) no irreparable injury would occur without the injunction because plaintiffs have already been competing with others and will continue to do so whether or not the court issues the injunction; (3) plaintiffs failed to establish that no adequate remedy at law existed; and (4) no likelihood of success on the merits existed because the evidence failed to reveal a trade secret.
 5 On appeal, plaintiffs claim only that the trial court erred in determining that plaintiffs did not possess a trade secret in the manufacturing process for the DP-37. Generally, a trade secret is a plan or process, tool, mechanism, compound, or information data utilized by a person in business operations and known only to that person and such *119 limited other persons to whom it may be necessary to confide it. (ILG Industries, Inc. v. Scott (1971), 49 Ill.2d 88, 92, 273 N.E.2d 393, 395.) Some factors in determining whether certain information is a trade secret are (1) the extent to which the information is known outside of the business, (2) the extent to which it is known by employees and others involved in the business, (3) the extent of measures taken to guard the secrecy of the information, (4) the value of the information to the business and to its competitors, (5) the amount of effort or money expended to develop the information, and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. ILG Industries, Inc. v. Scott (1971), 49 Ill.2d 88, 93, 273 N.E.2d 393, quoting Restatement of Torts sec. 757, Comment b (1939).
We need only address the third factor in the ILG Industries analysis: the extent of the measures that the person claiming the trade secret took to guard the secrecy of the information. A trade secret must be a secret in fact. The extent of the measures that the alleged owner takes to guard the secrecy of the information is determinative of whether it is a trade secret. Palin Manufacturing Co. v. Water Technology, Inc. (1982), 103 Ill. App.3d 926, 930-31, 431 N.E.2d 1310, 1314.
Plaintiffs presented evidence that only they and Stephen knew the total manufacturing process for the DP-37. None of the approximately 30 employees involved in the production of the seal knew the entire manufacturing process. Plaintiffs segregated employees in that each employee worked on an individual step in the manufacturing process without knowing any or all of the others. Further, the engineering office that contained the files of information on the process was locked when none of the plaintiffs or Stephen was there. The office door displayed a sign prohibiting admittance to any unauthorized personnel.
Stephen, however, claimed that plaintiffs made little or no effort to guard the secrecy of the process. He produced evidence that conflicted with that of plaintiffs, namely, that plaintiffs held no meetings or discussions to establish and maintain the secrecy of the process; they did not segregate critical steps in the manufacturing process within the plant; they never asked their employees to sign nondisclosure agreements or covenants not to compete; and they kept various blueprints in unlocked drawers with no indicia of confidentiality. The trial court found that plaintiffs' segregation of their employees and their locking of the files in their office inadequately guarded the secrecy of the manufacturing process, absent a secrecy agreement amongst themselves.
*120  6 After reviewing the record, we cannot say that the trial court's denial of the preliminary injunction was against the manifest weight of the evidence. The trial court essentially determined that plaintiffs did not establish that they possessed a certain and clearly ascertainable right in need of protection and that they were unlikely to succeed on the merits of their underlying complaint because the evidence did not tend to prove that plaintiffs' process for the manufacture of the DP-37 amounted to a trade secret.
Plaintiffs' evidence notwithstanding, Stephen is a son of one of the four founding partners of plaintiffs' business. Stephen's father proposed and implemented the idea of the knife-edge seal. Further, Stephen worked in the business for 20 years, learning the seal process and other aspects of the family business. He was not a mere employee. As a result, plaintiffs' alleged secrecy measures directed toward company employees did not apply to Stephen. This intimate relationship between plaintiffs and Stephen stressed, rather than downplayed, the need for some type of secrecy agreement between Stephen and plaintiffs. However, plaintiffs produced no evidence indicating the existence of any confidentiality agreement or understanding between them and Stephen. Under these circumstances, we are unable to conclude that the trial court's denial of plaintiffs' motion for a preliminary injunction was reversible error as against the manifest weight of the evidence.
For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.
Affirmed.
McMORROW, J., concurs.
JUSTICE JIGANTI, dissenting:
In determining whether a trade secret exists, an isolated analysis of any one factor is improper. All factors must be balanced in light of the commercial realities that are present in each case. To do otherwise would undermine the policies toward the encouragement of invention and the maintenance of commercial morality. For these reasons, I respectfully dissent.
In affirming the trial court's decision, the majority states that only one factor need be addressed: the extent of the measures that the person claiming the trade secret took to guard the secrecy of the information. This analysis, however, neglects the fact that in this case there is ample evidence with respect to the other factors to support a *121 finding of a trade secret. Moreover, it incorrectly assumes that to find the existence of a protectable trade secret each factor in the Restatement of Torts test adopted by the court in ILG Industries, Inc. v. Scott (1971), 49 Ill.2d 88, 93, 273 N.E.2d 393, must be treated independently and without regard to the other facts of the particular case. In addition, it requires that each factor be weighed equally and that no balancing among factors occur. The extent of the measures taken to guard the secrecy of the information is just but one factor. This factor should be weighed and balanced against all others.
In this case the plaintiffs demonstrated that, as to the extent to which the information was known outside of the business and to the employees within the business, currently only five people know all the various complex processes required in manufacturing the seal. With regard to the amount of time and effort expended to develop the information, the evidence revealed that over a nine-year period the plaintiffs spent approximately $1,700,000. The fact that no competitor has successfully duplicated the seal also satisfies the Restatement test with regard to the value of the information and the difficulty in acquiring that information. When these factors, in addition to the fact that measures were in fact taken to guard the secrecy of the information, are balanced and considered in light of the fact that this was a relatively small, family-operated business, it is clear that the plaintiffs have established the existence of a trade secret. Consequently, the order of the trial court should be reversed.