THE VILLAGE OF WORTH, Plaintiff-Appellant, v. GERALD WATSON *et al.*, d/b/a Watson Towing and Garage Service, Defendants-Appellees.

First District (3rd Division)   No. 1—90—3095

Opinion filed June 10, 1992.—Rehearing denied December 4, 1992.

James E. Gierach, of Gierach, Schuessler & Walsh, Ltd., of Oak Lawn, for appellant.

William Fitzpatrick, of Callahan, Fitzpatrick, Lakoma & McGlynn, of Oak Lawn, for appellees.

JUSTICE CERDA delivered the opinion of the court:

Plaintiff, Village of Worth, a municipal corporation, appeals from the entry of summary judgment in favor of defendants, Gerald Watson and Marilyn Watson, d/b/a Watson Towing and Garage Service, in a municipal ordinance violation case. Plaintiff argues that: (1) the trial court erred in granting summary judgment in favor of defendants and by denying plaintiff's motion for summary judgment; (2) the trial court erred in denying plaintiff's motion for preliminary injunctive relief and in denying plaintiff leave to file a second amended complaint; and (3) the trial court erred in allowing defendants leave to withdraw an affirmative defense without prejudice. We reverse in part, affirm in part, and remand the cause.

Plaintiff filed a first amended verified complaint alleging the following. Defendants were in the business of towing, storing, and servicing motor vehicles at their principal place of business located at 11015 South Harlem Avenue, Worth, Illinois, in a B2 zone (general business district). The following violations of plaintiff's zoning ordinances existed: (1) defendants allowed trucks in excess of 1½-ton capacity to park on their property (Worth, Ill., Zoning Ordinance §§VII.D.1.e., VII.D.2.(26) (1964)); (2) defendants failed to properly surface the parking area (Worth, Ill., Zoning Ordinance §IX.F.8.b. (1964)); and (3) defendants allowed the storing of junk or nonoperating automobiles or trucks on their property (Worth, Ill., Zoning Ordinance §IV.G.2.b. (1964)). The complaint sought fines and injunctions requiring defendants to correct the violations.

Plaintiff filed a motion for summary judgment in which it argued that: (1) the company towed, repaired, and stored vehicles; (2) in Gerald Watson's application for a business license, he wrote the words "towing, garage and storage"; (3) 80% of the vehicles Gerald Watson repaired were trucks of over 1½-ton capacity; (4) trucks of over 1½-ton capacity had been parked on the property overnight and as long as one month; (5) one tractor trailer of over 1½-ton capacity had been parked on the property for over three months; (6) two or three loader machines had been stored outside in the parking area for approximately six months awaiting repair; (7) several times there were so many trucks of over 1½-ton capacity to be repaired that Gerald Watson had to find alternative parking for them off the lot; (8) the property was located within 150 feet of a residence district boundary line and was

adjacent to residential areas on three sides; and (9) the parking area on the property was not blacktopped, but was made of stone, gravel, and clay, and had been in that condition from the time of purchase.

Defendants argued the following in support of their motion for summary judgment and in opposition to plaintiff's motion for summary judgment. Defendants operated a public garage, which was a permitted use under the ordinance. Defendants did what an operator of a public garage was authorized to do: equip, repair, service, hire, sell, and store motor vehicles, including semi-trailer trucks. Trucks of over 1½-ton capacity were parked on defendants' property in furtherance of the principal use of the property for a public garage, as opposed to an accessory use. There was a genuine issue of fact whether gravel and crushed stone surfacing was smooth and durable within the meaning of the ordinance. The ordinance's term "junk" was void for vagueness. In the alternative, there were genuine issues of fact as to what constituted junk and storing.

Defendants filed the affidavit of Gerald Watson in support of their motion for summary judgment and in opposition to plaintiff's motion for summary judgment. He swore to the following: (1) the business was a public garage and was to repair, service, hire, sell, and store motor vehicles including trucks, truck trailers, and semi-trailers; (2) he had been engaged in the business at that location for approximately 26 years and prior to the enactment of plaintiff's zoning ordinance on December 15, 1964; (3) he did not operate the businesses of parking lot or storage garage; (4) he had been issued business licenses by plaintiff until 1987, when plaintiff claimed violation of zoning ordinances; (5) all areas surrounding the building were surfaced with a smooth and durable gravel and had been so surfaced for more than 26 years; (6) he repaired trucks and other motor vehicles and, while awaiting parts, parked them in the areas surrounding the house; (7) all vehicles on the premises were either waiting to be repaired, being repaired, or waiting to be picked up after repairs; (8) occasionally, there had been truck parts, tires, and other motor vehicle parts on the premises as a necessary part of the business; and (9) occasionally, there were nonoperating automobiles and trucks on the premises as a necessary part of the business, but he did not store them.

Plaintiff filed an emergency petition for a preliminary injunction on May 25, 1990. It argued that as of May 2, 1990, the condition of the property had deteriorated and that during the week of May 7, 1990, various building materials and spiral staircases were moved onto the property from property belonging to Robert Stewart, who was the defendant in a separate municipal ordinance violation case concerning

the moved materials. The trial court refused to grant the relief on the basis that there was no emergency.

On or about June 8, 1990, plaintiff filed a motion for leave to file a second amended verified complaint adding counts III and IV alleging additional ordinance violations related to the property's condition. Count III was based on the same property conditions alleged in counts I and II, but also alleged that if defendants' parking and storage of trucks were principal uses of the property, then defendants violated the ordinance section that required all business to be conducted within completely enclosed buildings. (Worth, Ill., Zoning Ordinance §VII.D.1.c. (1964).) Count III also made the new allegation that defendants, by parking trucks in off-street parking spaces that were open to the sky and in the front and side yards, violated off-street parking ordinances that: (1) limited off-street parking to parking of passenger automobiles of patrons, occupants, or employees; (2) permitted off-street parking to be located in a rear yard; and (3) required that front and side yards not be less than 25 feet. (Worth, Ill., Zoning Ordinance §VII.D.1.c. (1964).) Count IV addressed the removal of building materials from the Stewart property and their placement on defendants' property. The storage of this material allegedly violated another zoning ordinance that prohibited the open storage of building material in yards except during active construction for permissible uses. (Worth, Ill., Zoning Ordinance §IV.G.2.a. (1964).) The materials had been ordered removed from the premises of Robert Stewart on May 11, 1990.

On June 8, 1990, the trial court granted defendants' motion for summary judgment. It found that: (1) defendants' business was a permitted use; (2) the paving ordinance did not apply to defendants because it applied only to buildings erected after the ordinance's effective date of December 15, 1964; (3) the phrase "storing of junk" was so vague as to violate the due process clause; and (4) the ordinance prohibiting the storing of nonoperating automobiles or trucks was not applicable to a public garage. On the same date, the trial court granted plaintiff's motion to strike the defense of *laches*, granted defendants' motion to withdraw the defense of equitable estoppel without prejudice, and denied plaintiff's motion to file a second amended complaint.

Photographs of defendants' property that were shown to the trial court during the hearing and additional photographs that were sworn to accurately portray the property on May 25, 1990, were put into the record with leave of court.

The following phrases, which are relevant to the appeal, are defined by the zoning ordinance:

"ACCESSORY BUILDING OR USE—one which: (a) is subordinate to and serves a principal building or principal use; (b) is subordinate in area, extent, or purpose to the principal building or principal use served; (c) contributes to the comfort, convenience, or necessity of occupants of the principal building or principal use served; and (d) is located on the same zoning lot as the principal building or principal use served; and with the single exception of such accessory off-street parking facilities as are permitted to locate elsewhere than on the same lot with the building or use served." (Worth, Ill., Zoning Ordinance §III.B.1. (1964).)

"GARAGE, PUBLIC—any building or premises, other than a private or a storage garage, where motor vehicles are equipped, repaired, serviced, hired, sold or stored." (Worth, Ill., Zoning Ordinance §III.B.68. (1964).)

"MOTOR VEHICLE—a passenger vehicle, truck, truck-trailer, trailer, or semi-trailer propelled or drawn by mechanical power." (Worth, Ill., Zoning Ordinance §III.B.103. (1964).)

"USE, ACCESSORY—a subordinate use which is clearly and customarily incidental to the principal use of a building or premises and which is located on the same lot as the principal building or use, except for such accessory parking facilities as are specifically authorized to be located elsewhere." (Worth, Ill., Zoning Ordinance §III.B.160. (1964).)

"USE, PRINCIPAL—the main use of land or buildings as distinguished from a subordinate or accessory use. It may be either a permitted or special use." Worth, Ill., Zoning Ordinance §III.B.162. (1964).

Plaintiff first argues on appeal that defendants violated the zoning ordinance that prohibited, as an accessory use, the parking of trucks of over 1½ tons:

"The parking of trucks in the open as an accessory use, when used in the conduct of a permitted business listed hereinafter, shall be limited to vehicles of not over one and one-half tons capacity, when located within 150 feet of a Residence District boundary line." (Worth, Ill., Zoning Ordinance §VII.D.1.e. (1964).)

Plaintiff argues that the 1½-ton limit was a specific prohibition that overrode the permitted use of public garage in a B2 district (Worth, Ill., Zoning Ordinance §VII. 2.a.(18) (1964)), which was defined as permit-

ting the repair of motor vehicles (Worth, Ill., Zoning Ordinance §III.B.68. (1964)), where the latter ordinance did not contain a limitation on vehicle size. Plaintiff cites the provision that where conditions of different ordinance provisions apply to land use, the regulation that either is more restrictive or imposes higher standards governs. (Worth, Ill., Zoning Ordinance §IV.A.2. (1964).) Plaintiff refers to the inclusion of off-street parking as an accessory use in a B2 zoning district as contradicting the finding that parking and storing of large trucks were principal uses. (Worth, Ill., Zoning Ordinance §VII.D.2.a.(37) (1964).) In the alternative, plaintiff argues that if defendants' parking of large trucks was a principal use, then that parking was a business activity that had to be conducted within completely enclosed buildings (Worth, Ill., Zoning Ordinance §VII.D.1.c. (1964).) Defendants respond that the parking of trucks of over 1½ tons was a necessary part of a public garage's operation and was therefore a principal use of the property.

■ Principal use is defined by the ordinance as the main use of the property; it is not defined as a necessary use. The principal use of defendants' property was to repair vehicles, and the parking of trucks was incidental to the principal use. Therefore, the ordinance prohibiting the parking of the 1½-ton trucks as an accessory use (Worth, Ill., Zoning Ordinance §VII.D.1.e. (1964)) was applicable to defendants' property, and the trial court erred in granting summary judgment in favor of defendants for this violation. We hold that summary judgment should have been granted in favor of plaintiff.

■ Plaintiff next argues that the surfacing ordinance, which required smooth and durable surfacing material on open off-street parking spaces (Worth, Ill., Zoning Ordinance §IX.F.8.b. (1964)), could be retroactively applied to defendants' previously conforming use of the property, even though the property was in existence prior to the ordinance's enactment, if it would be in the interest of the public welfare. But the ordinance specifically states that it applies only to uses of land established after the ordinance's effective date:

"The off-street parking and off-street loading provisions of this ordinance shall apply as follows:

1. Accessory off-street parking and off-street loading facilities shall be provided as required by the regulations of this Section IX for all buildings and structures erected and all uses of land established in each district after the effective date of this ordinance." Worth, Ill., Zoning Ordinance §IX.A.1. (1964).

The issue, then, is not whether plaintiff could retroactively apply the surfacing ordinance to defendants' property; plaintiff chose to make the ordinance apply only prospectively to new buildings and uses. We

hold that the trial court properly granted summary judgment in favor of defendants on the alleged violation of the surfacing ordinance.

Plaintiff next argues that the trial court erred in finding that the ordinance prohibiting the storage of junk was unconstitutionally vague because it gave sufficient warning of prohibited conduct and because junk was generally accepted to mean old metal, paper, and rags, and useless stuff or trash. The ordinance at issue provides:

"The following *** uses are specifically prohibited in front, side, or rear yards:
***
(b) Storing of junk or non-operating automobiles or trucks." (Worth, Ill., Zoning Ordinance §IV.G.2.b. (1964).)

Plaintiff refers to the ordinance's definition of junkyard, which referred to the storage of "waste or scrap materials including but not limited to scrap iron and other metals, paper, rags, rubber tires and bottles." (Worth, Ill., Zoning Ordinance §III.B.81. (1964).) Plaintiff also refers to the ordinance that provides that any words not defined are to be construed in their generally accepted meanings as defined "in the most recent publication of Webster's Dictionary." (Worth, Ill., Zoning Ordinance §III.A.6. (1964).) Defendants argue that the term "junk" is vague because the ordinance did not define it and because plaintiff's zoning enforcement officer testified that he was required to make a subjective determination about whether something was junk with which others could disagree.

A statute must give a person of ordinary intelligence a reasonable opportunity to know what conduct is lawful or unlawful. (*People v. O'Donnell* (1987), 116 Ill. 2d 517, 522, 508 N.E.2d 1066, 1068.) Due process is not violated if the duty imposed by the statute is described in sufficiently definite terms to serve as a guide to those who must comply with it. (*People v. Gurrell* (1983), 98 Ill. 2d 194, 207, 456 N.E.2d 18, 23.) A statute is not unconstitutionally vague merely because one could imagine hypothetical situations in which the meaning of some terms might be in question. (*Schiller Park Colonial Inn, Inc. v. Berz* (1976), 63 Ill. 2d 499, 513, 349 N.E.2d 61, 68.) A statute violates due process if persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Escalona v. Board of Trustees* (1984), 127 Ill. App. 3d 357, 363, 469 N.E.2d 297, 301.

Defendants cite in support *City of Collinsville v. Seiber* (1980), 82 Ill. App. 3d 719, 403 N.E.2d 90, and *Dombrowski v. Pfister* (1965), 380 U.S. 479, 14 L. Ed. 2d 22, 85 S. Ct. 1116. In *Collinsville* (82 Ill. App. 3d 719, 403 N.E.2d 90), a municipal ordinance prohibited residents from committing a nuisance in permitting or maintaining "an unsightly

yard or premises where there \*\*\* [was] an accumulation or deposit of any vehicle, equipment, junk, wrecked or disabled automobile, trucks, material of any nature, waste or earth." Defendant there argued that the ordinance was unconstitutionally vague and that the term "junk" was not defined. The court held that the ordinance was not impermissibly vague because the term was significantly explained in the context of the ordinance as a whole. (*Collinsville*, 82 Ill. App. 3d at 725-26, 403 N.E.2d at 94.) In *Dombrowski* (380 U.S. 479, 14 L. Ed. 2d 22, 85 S. Ct. 1116), the court addressed challenges to statutes that were not concerned with "junk" as overly broad and as vague regulations of expression.

■■ Plaintiff's zoning ordinance provides for a definition of the term "junk" by incorporating a dictionary's definition (Worth, Ill., Zoning Ordinance §III.A.6. (1964)), but the name "Webster's" is used with more than one dictionary,[1] and dictionary definitions of "junk" vary. For example, plaintiff cites the Webster's New World Dictionary definition of "junk," which is different from the definition in Webster's Third New International Dictionary, which is published by a different publisher.[2] Because section III.A.6. of the ordinance does not refer to a particular dictionary, section III.A.6. is indefinite and therefore void. Instead, the general rule of statutory construction that the plain and ordinary meaning of words is to be used (*City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 46, 429 N.E.2d 492, 494) must be applied here. We hold that the ordinary meaning of "junk" is material of little or no value, such as old metal, glass, and paper. The entry of summary judgment in favor of defendants on this alleged ordinance violation is reversed, and the cause is remanded for a determination whether defendants violated section IV.G.2.b.

---

[1] The word "Webster's," derived from the name of the 19th century lexicographer, Noah Webster, is now public property. (Hays, *Dictionaries Go To War Over Words*, N.Y. Times, October 22, 1991, at 3, col. 4.) For example, Simon and Schuster publishes Webster's New World Dictionary, Merriam-Webster publishes Webster's Ninth New Collegiate Dictionary, and Random House publishes Webster's College Dictionary. Hays, *Dictionaries Go To War Over Words*, N.Y. Times, October 22, 1991, at 3, col. 4.

[2] Webster's New World Dictionary defines "junk" as "1. orig., old cable or rope \*\*\* 2. old metal, glass, paper, rags, etc. 3. [Colloq.] useless or worthless stuff; trash; rubbish \*\*\*." (Webster's New World Dictionary 765 (1982).) But Webster's Third New International Dictionary defines "junk" as "2. a (1) old iron, glass, paper, cordage, or other waste that may be treated so as to be used again in some form (2): secondhand, worn, or discarded articles of any kind with having little or no commercial value." Webster's Third New International Dictionary 1227 (1981).

Plaintiff next argues that the trial court abused its discretion in denying it preliminary injunctive relief in connection with the building material moved onto defendants' property. Plaintiff argues that there was an emergency concerning "the ability of the court to effectively resolve disputes between litigants and the meaningful compliance with an order of court." Plaintiff also argues that the conduct was likely contempt of court and flaunted the court's authority because the other property owners were defendants in another ordinance violation prosecution. Defendants argue that the petition asked for essentially the same relief as the complaint, that no emergency existed, and that the issue was moot because summary judgment was entered for defendants two weeks later.

A preliminary injunction is not a matter of right (*American National Bank & Trust Co. v. Carroll* (1984), 122 Ill. App. 3d 868, 880, 462 N.E.2d 586, 595) and is within the trial court's discretion (*In re Marriage of Weber* (1989), 182 Ill. App. 3d 212, 218, 537 N.E.2d 1024, 1027). One must show a lawful right for which one seeks protection, irreparable harm, and inadequate legal remedies. (*American*, 122 Ill. App. 3d at 880, 462 N.E.2d at 595.) A preliminary injunction is used where an extreme emergency exists and serious harm would otherwise result. *Junkunc v. S.J. Advanced Technology & Manufacturing Corp.* (1986), 149 Ill. App. 3d 114, 117-18, 498 N.E.2d 1179, 1182.

■ The ordinance allegedly violated prohibited the open storage in yards of building material except during active construction for permissible uses. (Worth, Ill., Zoning Ordinance §IV.G.2.a. (1964).) The petition for preliminary injunctive relief sought relief from allegedly new conditions of the property. The issue whether the court abused its discretion in denying preliminary injunctive relief was not made moot by the entry of summary judgment because summary judgment was not entered upon the matter of the new accumulation of materials. But no emergency was presented by the addition of materials on defendants' property. The trial court did not abuse its discretion in refusing to grant plaintiff's petition.

Plaintiff next argues that the trial court erred in refusing plaintiff leave to amend its complaint. Plaintiff argues that it was in the furtherance of justice to permit the amendment because it would conserve judicial time to try the entire dispute before one judge. Defendants argue that the trial court did not abuse its discretion because count IV was an entirely different cause of action based upon facts unrelated to the original complaint and because the original complaint had already been disposed by summary judgment.

Section 2—616 of the Code of Civil Procedure provides that at any time before final judgment, an amendment adding a new cause of action can be allowed on just and reasonable terms. (Ill. Rev. Stat. 1989, ch. 110, par. 2—616.) The standard of review is abuse of discretion. (*Kupianen v. Graham* (1982), 107 Ill. App. 3d 373, 377, 437 N.E.2d 774, 776.) The factors to be considered in determining whether the trial court's discretion was properly exercised are whether the amendment would cure defective pleadings, whether other parties would sustain prejudice or surprise by virtue of the proposed amendment, the timeliness of the proposed amendment, and whether there were previous opportunities to amend the pleadings. *Kupianen*, 107 Ill. App. 3d at 377, 437 N.E.2d at 776-77.

■ Plaintiff filed the proposed second amended complaint soon after the alleged ordinance violation occurred and prior to the entry of summary judgment on the first amended complaint. Although the new counts alleged a different ordinance violation than did the other counts, the allegations were of the same type as the prior complaints' allegations of accumulation of junk and the parking of large trucks. The second amended complaint was timely, and defendants would not have been prejudiced. It would be more efficient to resolve the new allegations in the current litigation than in a new lawsuit. But whether or not the trial court abused its discretion, we direct that plaintiff be granted leave to file the second amended complaint upon remand because there will be further proceedings in connection with the allegation that defendants store junk.

Plaintiff finally argues that the trial court erred in giving defendants leave to withdraw the affirmative defense of equitable estoppel without prejudice because the defense was not filed until nearly two years after the lawsuit was filed and after discovery was completed. Plaintiff argues that because the withdrawal was without prejudice, defendants could raise the affirmative defense again upon remand. Defendants argue that the defense was withdrawn after the entry of summary judgment.

■ We see no error in permitting the withdrawal without prejudice. If defendants wish to reassert the defense upon remand, the trial court will have to determine the appropriateness of the amendment of defendants' answer pursuant to section 2—616 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—616).

■ Defendants argue that the photographs contained in plaintiff's appellate brief are improper because these photographs were not properly before the trial court on the motion for summary judgment but that the trial court only granted leave to plaintiff to file them later. It is unnecessary to address this issue because the issues on appeal have not required an examination of the photographs' depiction of the condition of defendants' property. Defendants' motion to strike the photographs is denied.

The judgment of the trial court is reversed in part and affirmed in part, and the cause is remanded.

Reversed in part; affirmed in part; and remanded.

RIZZI and TULLY, JJ., concur.