THE CITY OF FREEPORT, Petitioner-Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

Second District    No. 2—88—1183

Opinion filed July 19, 1989.

John G. Garrity, of Beckmire, Garrity & Vogt, of Freeport, and Louis E. Neuendorf & Associates, of Sandwich (Dennis P. Drda, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield, Dorothy M. Gunn, of Pollution Control Board, of Chicago, and John M. Vandlik, of Pollution Control Board, of Urbana (Michelle D. Jordan, Matthew J. Dunn, and Patricia E. Collins, Assistant Attorneys General, of Chicago, of counsel), for respondent Pollution Control Board.

John Holmstrom III and James L. Gitz, both of Holmstrom & Green, P.C., of Rockford, for respondents John Schroder, Velma Schroder, Lamorn Morris and James Oswalt.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, City of Freeport (City), appeals from an order entered by the Illinois Pollution Control Board (Board). The City maintains that the Board erred when it entered a $10,000 civil penalty or fine against the City. We affirm.

On November 5, 1986, a citizen's complaint was filed with the Board alleging that the City's sanitary sewer backed up and overflowed into and on residential properties. On its own motion, the Board joined the Illinois Environmental Protection Agency (Agency) and designated it as a nominal complainant. The Agency filed a motion for relief from misjoinder. The motion expressed the Agency's unwillingness to participate in the suit due to the possibility that such participation would jeopardize its negotiations already in progress with the City. The Board granted the Agency's motion and entered an order dismissing the Agency as a party.

On June 23, 1987, the Board held a hearing on the complaint. During the hearing, a number of City residents testified to the sanitary sewer backups which they had experienced on their properties over the past 20 years. These sewer backups caused extensive flooding and property damage. The residents testified that, in spite of attempts to get the City to solve the sanitary sewer backups, the problems still continued. The executive director of the City water and sewer commission testified as to work done on the sewer system. The director testified that the City expended $1,187,664.32 from 1983 through 1987 on the system. Additionally, the City, in response to a preenforcement letter it had received from the Agency, had been working with the Agency to correct its sanitary sewer problems.

The City retained an engineering firm, Missman, Stanley & Associates (Missman), to make an engineering study of the sanitary sewer system and to make proposals for work to be done to correct the problems. In February 1987, Missman completed a report entitled "Interim Preliminary Findings." This report, which had been requested by the Agency during negotiations with the City, included a recommendation that the City conduct a sewer system evaluation study. In March 1987, Missman completed a second report entitled "Preliminary Findings." Both reports indicated a project completion date of October 31, 1990. After reviewing the first Missman report, the Agency stated in a letter to the City that the implementation schedule was appropriate. The Agency also stated it would like to see "a verification that the City fully intends to finance and complete the project."

City representatives indicated an intention to proceed with the sewer system evaluation study when State grant funds became available. Testimony at the hearing indicated this same position on the part of the City. However, a letter from a State representative to the Board indicates that State funds were not likely to be received for the City sewer project. He further expressed the hope that the City's

search for State grant funds would not be used as an excuse to avoid immediate remedial measures.

On February 25, 1988, the Board entered an interim order. The Board found that the City had violated sections 306.102(a), 306.303 and 306.304 of chapter 35 of the Illinois Administrative Code. (35 Ill. Adm. Code §§306.102(a), 306.303, 306.304 (1985).) Noting that the record was not detailed as to how the City's sewer system problems were to be solved, the Board ordered the City to submit to the Board, Agency and complainants, by May 2, 1988, a plan for compliance with the cited regulations. This plan was to contain a schedule detailing steps to be taken and corresponding dates by which those steps should be completed. The Board required the City to achieve substantial compliance by October 31, 1990. The Board retained jurisdiction in the matter and stated that the City's failure to make progress in addressing the problems could lead to penalties and possible restricted status to prevent additional hookups.

On April 29, 1988, the City submitted a compliance plan to the Board, Agency and complainants. The plan included a "substantial compliance" date of August 31, 1991.

On September 8, 1988, the Board entered a final order. Regarding the compliance date in the City's plan, the Board noted that the date was 10 months later than the Board had ordered and that the City had offered no explanation for the delay. The order indicated that the Board again found that the City had violated sections 306.102(a), 306.303 and 306.304 of chapter 35 of the Illinois Administrative Code. Additionally, the Board ordered the City to achieve compliance by December 31, 1990, extending its original compliance date to account for time the Board had used in its deliberations on a remedy. Lastly, the Board ordered the City to pay a civil penalty of $10,000. The Board noted that, given the City's violations and the time over which they have occurred, a larger penalty could have been assessed. However, as an aid to the enforcement of the Act, the Board assessed the lower amount of $10,000.

On October 13, 1988, complainants filed a motion for limited rehearing or modification of final order. The Board denied this motion on November 3, 1988. On December 15, 1988, the Board denied the City's motion for stay of the civil penalty. On January 31, 1989, the City filed with this court a motion for stay of the civil penalty. We granted this motion on February 7, 1989. The City has appealed the portion of the Board's September 8, 1988, final order which imposes a $10,000 civil penalty or fine. This court's jurisdiction is invoked pursuant to section 41(a) of the Environmental Protection Act (Act) (Ill.

Rev. Stat. 1987, ch. 111½, par. 1041(a)).

The City first contends that the Board lacked statutory authority to impose a civil penalty or fine on the City. We disagree.

Section 33(b) of the Act provides:

"Such order may include a direction to cease and desist from violations of the Act or of the Board's rules and regulations or of any permit or term or condition thereof, and/or the imposition by the Board of civil penalties in accord with Section 42 of this Act." (Ill. Rev. Stat. 1987, ch. 111½, par. 1033.)

Section 42(a) of the Act provides:

"Except as provided in this Section, any person that violates any provisions of this Act or any regulation adopted by the Board, or any permit or term or condition thereof, or that violates any determination or order of the Board pursuant to this Act, shall be liable to a civil penalty of not to exceed $10,000 for said violation and an additional civil penalty of not to exceed $1,000 for each day during which violation continues; such penalties may, upon order of the Board or a court of competent jurisdiction, be made payable to the Environmental Protection Trust Fund, to be used in accordance with the provisions of 'An Act creating the Environmental Protection Trust Fund', approved September 22, 1979, as amended." Ill. Rev. Stat. 1987, ch. 111½, par. 1042.

Our supreme court in *City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, stated:

"The Board is to conduct hearings and, if violations are found, appropriately it is to impose penalties. The legislature may confer those powers upon an administrative agency that are reasonably necessary to accomplish the legislative purpose of the agency [citations], and we consider that it was appropriate to give the Board the authority to impose monetary penalties." (*City of Waukegan*, 57 Ill. 2d at 184.)

It is clear that the legislature has conferred upon the Board the authority to impose a civil penalty or fine.

The City argues that the imposition of the civil penalty or fine in this case is not statutorily authorized because, by not imposing a fine in its interim order which declared the violations, the Pollution Control Board lost jurisdiction to later impose a fine. The City cites no authority for this proposition, and we have been unable to find any. The $10,000 civil penalty was included in a final order and, therefore, is statutorily authorized.

The second issue raised by the City is whether the Board abused

its discretion by imposing a $10,000 civil penalty on the City.

■ Upon review of an administrative decision, the court is to determine if there was competent evidence in the record to support the decision. (*May v. Pollution Control Board* (1976), 35 Ill. App. 3d 930, 934; see also *City of Monmouth v. Pollution Control Board* (1974), 57 Ill. 2d 482, 490.) An administrative order will not be disturbed upon review unless it is clearly arbitrary, capricious or unreasonable. (*Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 310; accord *Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill. 2d 204, 207.) The legislature vested the Board with broad discretionary powers in the imposition of civil penalties. *Southern Illinois Asphalt Co.*, 60 Ill. 2d at 209; *City of Monmouth*, 57 Ill. 2d at 490.

■ The legislature has outlined several factors to be considered by the Board when making decisions and entering orders to effect those decisions. Section 33(c) of the Act provides:

"In making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits involved including, but not limited to:

(i) the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people;

(ii) the social and economic value of the pollution source;

(iii) the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved;

(iv) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source; and

(v) any economic benefits accrued by a noncomplying pollution source because of its delay in compliance with pollution control requirements." (Ill. Rev. Stat. 1987, ch. 111½, par. 1033.)

These guidelines afford protection against orders being arbitrarily or capriciously entered by the Board. *Southern Illinois Asphalt Co.*, 60 Ill. 2d at 207-08, citing *City of Waukegan*, 57 Ill. 2d at 182.

In its interim order of February 25, 1988, the Board expressly addressed the factors set forth in section 33(c). The Board found that the sewer backups and floods have greatly interfered with the lives of many of Freeport's residents and have created conditions that threaten the public's health and general welfare. Additionally, the

Board found that the pollution source, the sanitary sewer system, has great economic and social value. However, the Board stated that: "When a sewer system malfunctions in a manner such as Freeport's, such value is lost to those who experience the malfunctioning firsthand." Furthermore, the Board determined that it is imperative that the system function properly due to its inherent close proximity to a residential area. Finally, in reviewing the technical practicability and economic reasonableness of correcting the problem, the Board found that there was no evidence presented suggesting the solutions to the sewer problems were technically impracticable or economically unreasonable.

All of these findings were alluded to by the Board in its final order of September 8, 1988, also. The final order included a substantial compliance date of December 31, 1990. Even if the City would comply by this date, the violations noted would have continued for an additional two years. If substantial compliance is delayed to August 31, 1991, as the City indicated, the violations would have continued for an additional three years. We note that the Board has the authority pursuant to section 42(a) to impose a fine of $1,000 per day for so long as the violations continue. The Board, however, chose not to assess such a penalty. It is obvious that these continued violations impose an extreme inconvenience on homeowners as well as a health risk.

■ In light of these findings and the legal principles announced earlier in this opinion, we find that the Board did not act arbitrarily or capriciously. The City does not dispute the fact that the cited violations exist. The Board properly exercised its broad discretion in imposing a $10,000 civil penalty on the City of Freeport. The Board's decision is supported by the evidence in the record, and, therefore, this court will not disturb that decision.

Affirmed.

NASH and REINHARD, JJ., concur.