DECATUR IMAGING CENTER, Plaintiff-Appellee, v. DONALD AMES *et al.*, Defendants-Appellants.

Fourth District   No. 4—92—0437

Opinion filed December 10, 1992.

Barr & Barr, of Decatur, for appellants.

Edward Q. Costa and Rhonda L. Richards, both of Samuels, Miller, Schroeder, Jackson & Sly, and Mark S. Morthland, of Record, Finney, Jankowicz & Morthland, both of Decatur, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Defendants Donald and Debbie Ames appeal from entry of a judgment against them in Macon County circuit court for collection fees incurred by Donald's medical provider, the plaintiff Decatur Imaging Center (Center). Defendants argue entry of the judgment is contrary to public policy because the agreement failed to specify how collection fees would be calculated. In the alternative, they argue the Center should have been required to establish the collection fees sought were reasonable. Although the agreement expressly informed defendants they would be liable for any related collection fees, the Center should

have been required to show the amount of fees was reasonable. We remand for this determination.

On May 16, 1990, Donald received medical services from the Center. Donald signed a "patient information form" which included the statement he was responsible for service charges incurred but not paid for by his insurance provider. Donald also signed under the following provision:

"IN THE EVENT YOUR ACCOUNT IS PAST DUE MORE THAN 120 DAYS IT MAY BE TURNED OVER TO A COLLECTION AGENCY. IF THIS DOES OCCUR YOU WILL BE RESPONSIBLE FOR ALL FEES INCURRED BY [PLAINTIFF] FOR COLLECTION AND/OR ATTORNEYS." See Appendix.

The charge incurred for the medical services totalled $720. Debbie Brunner, collection manager at the plaintiff company, testified she billed defendants monthly for these services. Her initial phone contact with defendants occurred in August 1990. She spoke with Donald and his wife Debbie after Donald referred her to Debbie. During both conversations she told defendants they owed the plaintiff company $720 and no payment had been made. Debbie told Brunner they were waiting for one of Donald's doctors to fill out an attending statement.

Defendants' unpaid account was referred to a collection agency November 2, 1990, because plaintiff company had received no payments from defendants. Brunner testified the Center incurred a collection fee of $360. Before referring the case to the collection agency she received no calls from defendants asking the Center not to turn over their unpaid account to a collection agent. Charles J. Schaab, director of the Center, also testified defendants had not contacted him to request their outstanding bill not be referred to a collection agency.

In January 1991, the Center received $576 from Donald's insurance provider as payment toward the outstanding $720. The Center also received a letter in January from counsel for defendants. Brunner related a phone call she received from Donald before this letter was received. According to Brunner, Donald phoned on January 18, 1991, and said he would pay the remaining $144 for the service provided but would pay no additional fees. The letter was dated January 21 and indicated the enclosed check for $144 represented defendants' payment in full for the May 1990 services. The Center refused to accept payment under these terms and returned the check to defendants. A notation by "Debbie" of the Center indicated because the bill was not paid in full, defendants' counsel should contact a representa-

tive of Advantage Credit. It provided the name of a representative of the credit agency and the agency's phone number.

Donald testified he did not know until October 1990 the bill to the Center remained unpaid because he had been hospitalized for an unrelated health problem for over 2½ months. He testified he spoke with a representative at the Center in late October about the outstanding account. The representative's name was Debbie and she told him the bill must be paid as soon as possible and his account would not be turned over to a collection agency. Donald testified Debbie agreed to hold their account unpaid until they got the problem resolved, *i.e.*, the need for a doctor's signature indicating medically necessary service had been provided. On cross-examination Donald denied he phoned the Center and told its representative he would not pay the outstanding bill and he was hiring counsel.

Brunner testified in rebuttal on behalf of the Center. She identified a phone log which indicated all calls made and received from defendants. The log did not contain any notation of the phone call which defendant Donald alleged he had with Debbie, a representative of the Center. The log did indicate the phone conversations previously discussed.

It did not, however, indicate an additional phone conversation testified about during defendants' case. Jim Cairns, an agent for Prudential Insurance Company, testified he spoke with Brunner on October 23 regarding defendants' outstanding debt. At that time, he testified, nothing was said about sending the bill to a collection agency. The log indicates only a conversation with a Prudential representative on September 4, 1990, when the representative explained they were waiting on a statement from one of Donald's doctors that the procedure performed in May 1990 was medically necessary. A second notation made on September 4 indicated the doctor's office was contacted and reported finding no such requested report.

An October 12, 1990, notation indicates Brunner spoke with defendant Debbie. Debbie reported the statement was sent to the doctor, who would return it to Prudential. Brunner's note indicates she told Debbie the account was over 120 days old and payment had to be made by next week to avoid a referral to a collection agency.

Plaintiff also submitted as an exhibit a statement directed to defendant Donald indicating the date, May 29, 1990, and noting "insurance filed." The following line on the statement is dated July 9, 1990, and indicates "insurance will pay in two weeks."

In February 1991, Advantage Credit and Collection Service, Inc., filed suit on behalf of the plaintiff company against defendants for

$756 plus costs. The $756 represented the $144 balance on the original bill, a $360 collection fee, and $252 for attorney fees. No testimony was presented to establish what, if any, action was taken to receive full payment from defendants before filing suit. After a bench trial, the trial judge ruled in favor of the Center and held defendants were liable for $504 plus costs, *i.e.*, the balance due, and the collection fee. He denied recovery of the $252 sought for attorney fees because the fees were not sufficiently established.

Defendants contend the trial judge's award to the Center of collection costs is contrary to public policy because the Center provided no evidence the costs were reasonable. In the alternative, they argue according to principles of contract law the trial judge abused his discretion by awarding costs absent evidence of how the costs were calculated, what services were performed by the collection agency, the reasonableness of the charges, or that the Center mitigated its damages.

Although the Center does not direct us to evidence to counter defendants' allegations, it contends the award of collection fees was proper and it had no duty to mitigate its damages.

■ Section 9(a) of the Collection Agency Act (Act) (Ill. Rev. Stat. 1991, ch. 111, par. 2012(a)) outlines reasons why disciplinary action may be instituted against debt collectors. Section 9(a)(29) states as a cause for such action, "[c]ollecting or attempting to collect any interest or other charge or fee in excess of the actual debt or claim unless such interest or other charge or fee is expressly authorized by the agreement creating the debt or claim unless expressly authorized by law." Ill. Rev. Stat. 1991, ch. 111, par. 2012(a)(29).

Defendants contend the patient information form signed by Donald did not *expressly* outline the nature of the collection and attorney fees for which defendant was liable if his outstanding bill to the plaintiff company was not timely paid. The Center argues section 9 of the Act applies only when the fees sought exceed the actual debt. Under this reading, section 9 of the Act does not apply because defendants' initial debt was $720 and the collection fee was only $360, less than the initial debt. We reject this interpretation of section 9 of the Act.

Words in a statute should be interpreted to represent their plain and ordinary meaning. To ascertain a word's ordinary meaning, we consider its dictionary definition. (*People ex rel. Daley v. Datacom Systems Corp.* (1991), 146 Ill. 2d 1, 15, 585 N.E.2d 51, 57; *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 215, 447 N.E.2d 394, 396.) "Excess" is defined in gen-

eral terms as an amount which goes beyond the necessary amount. Black's Law Dictionary 504 (5th ed. 1979).

Section 9(a)(29) of the Act authorizes a collection agent to charge a fee "in excess of the actual debt" only when the agreement expressly authorizes such a fee. (Ill. Rev. Stat. 1991, ch. 111, par. 2012(a)(29).) This provision requires notice to consumers that a fee will be *added* to their original debt when their debt remains outstanding beyond its payment date. Its application is not limited to instances when the additional fee is greater than the original debt.

■ Defendants' contention their agreement with the Center did not *expressly* authorize the additional $320 collection fee also fails. "Expressly" is defined, in part, as "in direct or unmistakable terms; explicitly; definitely; directly." (Black's Law Dictionary 522 (5th ed. 1979).) The form Donald signed stated if payment was not timely received, the account could be turned over to a collection agency and defendant would "be responsible for all fees incurred by [the plaintiff company] for collection and/or attorneys."

This provision expressly informed Donald he would have to pay any fees incurred by the Center in its attempts to obtain payment for services. In addition, Donald's claim he did not know until October that the bill incurred for medical services in May remained unpaid does not bolster his claim he did not know he would have to pay collection fees. His 2½-month stay in a hospital does not relieve him from paying his debts. We further note Debbie should also have known about the outstanding debt. Moreover, testimony by Brunner and the Center's logbook establish defendants were informed before October 1990 their bill was unpaid. Defendants were bound by the signed agreement to pay the outstanding bill within 120 days from May 16, 1990.

Defendants also argue the Center's attempt to collect both collection fees and attorney fees should not have been permitted. They compare the policy reasons for regulating collection agencies to reasons statutory law does not allow the collection of both collection fees and attorney fees in collecting on a check written with insufficient funds. When collecting on a check, both types of fees may be recovered if they are reasonable and if the case is not litigated. (Ill. Rev. Stat. 1991, ch. 26, par. 3—806.) Because attorney fees were not awarded in this case, defendants' argument relating to an award of both collection and attorney fees is misplaced and need not be addressed.

Defendants' argument the award of collection fees was contrary to section 9(a)(29) of the Act fails. (Ill. Rev. Stat. 1991, ch. 111, par.

2012(a)(29).) However, an additional contention raised by defendants provides reason to remand this case to the trial judge to determine whether the $360 collection fee was reasonable.

■ When seeking damages, the plaintiff must establish damages were sustained *and* there was a reasonable basis for calculation of the damages. (*Keno & Sons Construction Co. v. La Salle National Bank* (1991), 214 Ill. App. 3d 310, 312, 574 N.E.2d 151, 153.) Damages cannot be based on conjecture or speculation. (*Wehmeier v. UNR Industries, Inc.* (1991), 213 Ill. App. 3d 6, 34, 572 N.E.2d 320, 339.) The Center in this case failed to provide evidence of how the collection fee was calculated or that the fee was even paid by it to the collection agency.

■ An attorney who seeks fees for remedying problems between a creditor and debtor must show the fees sought are reasonable. The amount of time spent on the case, the attorney's ability, and the complexity of the case establish the appropriate fee. (*First National Bank v. Barclay* (1982), 111 Ill. App. 3d 162, 163, 443 N.E.2d 780, 781; *Quinsippi Corp. v. Bening* (1982), 105 Ill. App. 3d 241, 242-43, 433 N.E.2d 1368, 1369.) Similarly, a creditor who uses a collection agent for remedying a problem with a debtor must also establish the fee for the collection service is reasonable by specifying the amount of time expended and the work performed.

■ We reject defendants' argument the Center had a duty to mitigate its loss by accepting less than full payment for the unpaid bill and for collection and attorney fees. Defendants assumed responsibility for collection fees when Donald signed the patient information form. If the Center had accepted less than full payment it would have been estopped from later seeking the collection fee. *Amoco Oil Co. v. Segall* (1983), 118 Ill. App. 3d 1002, 1012, 455 N.E.2d 876, 883; *Schultheis v. McWilliams Electric Co.* (1991), 219 Ill. App. 3d 571, 576, 579 N.E.2d 1100, 1103.

A collection fee in this case was warranted. However, based on the lack of evidence of how the fee was calculated or that the Center paid it, the trial judge abused his discretion by awarding the Center $360 for collection costs. We remand for this determination.

Affirmed in part; reversed in part and remanded.

STEIGMANN, P.J., and LUND, J., concur.

966

# APPENDIX

## DECATUR IMAGING CENTER

### PATIENT INFORMATION

DATE:_____ HOME PHONE _864-4101_ WORK PHONE _864-2046_ SCAN #_____

PATIENT: _Ames_ _Donald_ _A._
          LAST NAME        FIRST NAME        INITIAL

ADDRESS: _5765 Firehouse Rd_ _Decatur_ _ILL_ _62550/_
          STREET              CITY       STATE    ZIP

SS# _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_ BIRTHDATE _7/13/53_ M X F__ MARITAL STATUS _Married_

EMPLOYER: _Electric Motor Service of De_ OCCUPATION _Pres._

GUARANTOR_____ SS#_____

EMPLOYER_____ _Patient does not_ PHONE_____

INSURANCE COMPANY _Prudential_ POLICY# _want only_

INSURANCE ADDRESS _E Persh. Rd_ POLICYHOLDER_____

_Decatur office_ INSURANCE PHONE_____

TO CONTACT IN CASE OF AN EMERGENCY _Debra B. Ames_ _released_

**AUTHORIZATION TO PAY BENEFITS TO THE DECATUR IMAGING CENTER**
I hereby authorize payment of the medical benefits, if any, to Decatur Imaging Center, otherwise payable to me for services as described below. I have been informed and understand that if my insurance does not completely reimburse Decatur Imaging Center for Magnetic Resonance Imaging Service provided, I am personally responsible for any uncovered charges.
SIGNED (Insured)✓_____ DATE_____

**AUTHORIZATION TO RELEASE INFORMATION**
I hereby authorize the Decatur Imaging Center to release any information acquired in the course of my examination or treatment to any insurance company against which claims are filed by me or my dependents.
SIGNED (Patient or parent if minor)✓_____ DATE_____

**MEDICARE PATIENTS ONLY**
I request that payment of assigned Medicare benefits be made either to me or on my behalf to Decatur Imaging Center for any services furnished to me by that facility. I also authorize any holder of medical information about me to release to the health care financing administration any information needed to determine these benefits or the benfits payable for related services.

SIGNATURE_____ DATE_____
(NOTE: Spouse or legal guardian must indicate relationship)

NOTE: IN THE EVENT YOUR ACCOUNT IS PAST DUE MORE THAN 120 DAYS IT MAY BE TURNED OVER TO A COLLECTION AGENCY. IF THIS DOES OCCUR YOU WILL BE RESPONSIBLE FOR ALL FEES INCURRED BY DECATUR IMAGING CENTER FOR COLLECTION AND/OR ATTORNEYS.
SIGNATURE ✓_____ DATE_____

PLAINTIFF'S
EXHIBIT
|
10-17-91