GERALD B. MILLER, Petitioner, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Fourth District    Nos. 4—93—0047, 4—93—0585 cons.

Argued March 22, 1994.—Opinion filed September 30, 1994.—Rehearing denied October 27, 1994.

Becky S. McCray, Fred C. Prillaman (argued), and Stephen F. Hedinger (argued), all of Mohan, Alewelt, Prillaman & Adami, of Springfield, for petitioner.

Donald M. Cadagin, State's Attorney, of Springfield (Robert L. Smith, Assistant State's Attorney (argued), of counsel), for respondent Sangamon County Department of Public Health.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Jerald S. Post, Assistant Attorney General (argued), of counsel), for respondent Pollution Control Board.

JUSTICE KNECHT delivered the opinion of the court:

This case involves two consolidated appeals from orders entered by the Illinois Pollution Control Board (Board) in a single case. (*Sangamon County v. Miller* (Dec. 17, 1992), ___ Ill. PCB Op. 92—37; *Sangamon County v. Miller* (Feb. 4, 1993), ___ Ill. PCB Op. 92—37.) In an administrative citation procedure, initiated by Sangamon County (County), the Board found Gerald Miller used his property as an open dump resulting in the occurrence of litter. (Ill. Rev. Stat. 1991, ch. 111$^{1}/_{2}$, par. 1021(p)(1).) The Board imposed a $500 penalty and ordered Miller to pay the costs of the hearing process which, by separate order, were assessed at $952.25. We affirm the finding of violation but find the amount of costs assessed by the Board was an abuse of discretion.

# I. FACTS

Miller's parcel of land was inspected by Brian Wood, a solid waste inspector at the County Department of Public Health in April 1992. He found an abandoned house, junked cars, trucks and farm equipment, household refuse, appliances, machinery parts, wire, metal construction materials, storm windows, window framing, wood, batteries, and cans strewn about the property. Miller had previously been warned about the impermissible use of his property as an open dump and advised of potential penalties.

The County filed an administrative citation in May 1992 alleging Miller caused or allowed open dumping on his property resulting in the occurrence of litter. (Ill. Rev. Stat. 1991, ch. 111$^{1}$/$_{2}$, par. 1021(p)(1).) Miller contested the citation and a hearing was held in September 1992. On December 17, 1992, the Board entered an order bifurcating the proceedings, assigning a portion of the proceedings to "Docket A" and another portion to "Docket B."

In the same order, the Board ruled upon the matters assigned to "Docket A." The Board found Miller committed the violation, assessed a $500 penalty, and ordered Miller to pay the hearing costs which would later be assessed in the "Docket B" proceedings. The order additionally advised Miller he could seek appellate review of the decision if he filed a petition for review within 35 days of the entry of the order. On January 22, 1993, 36 days after the entry of the "Docket A" order, Miller filed an appeal from the Board's determination of a violation, docketed No. 4—93—0047.

On February 4, 1993, in the "Docket B" proceedings the Board assessed hearing costs of $952.25. On February 18, 1993, the assistant State's Attorney for the County requested clarification, which the Board regarded as a motion to reconsider (see *Sangamon County v. Miller* (Mar. 11, 1993), Ill. PCB Order 92—37). On March 10, 1993, Miller filed an appeal, docketed No. 4—93—0217, from the Board's order in the "Docket B" proceedings. Due to the Board's determination the letter to clarify was actually a motion to reconsider, this appeal was dismissed as premature. (*Miller v. Illinois Pollution Control Board* (Mar. 29, 1993), No. 4—93—0217 (order of dismissal).) The Board disposed of the motion to reconsider by order on June 3, 1993. (*Sangamon County v. Miller* (June 3, 1993), Ill. PCB Order 92—37.) Miller filed an appeal from the "Docket B" proceedings on July 8, 1993, docketed No. 4—93—0585. The first (No. 4—93—0047) and third (No. 4—93—0585) appeals have been consolidated.

# II. JURISDICTION

The Board contends this court does not have jurisdiction to

consider the arguments raised by Miller's first appeal as the notice of appeal was filed *more* than 35 days after the entry of the Board's December 17, 1992, order. In fact, Miller's first appeal was premature because the December 17, 1992, order was not final.

The Board referred to both its December 17, 1992, and February 4, 1993, orders as final orders, but only the latter order was a final order. Only final orders of the Board are subject to judicial review. (*Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 549, 387 N.E.2d 258, 260.) An order is final *only* if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either upon the entire controversy, or upon some definite and separate part thereof. (*Village of Niles v. Szczesny* (1958), 13 Ill. 2d 45, 48, 147 N.E.2d 371, 372; *Mars v. Priester* (1990), 205 Ill. App. 3d 1060, 1063, 563 N.E.2d 977, 979.) This principle applies to decisions of administrative agencies. *Waste Management of Illinois, Inc. v. Pollution Control Board* (1990), 201 Ill. App. 3d 614, 619, 558 N.E.2d 1295, 1298, *rev'd on other grounds* (1991), 145 Ill. 2d 345, 585 N.E.2d 606.

An order is final if it determines the ultimate rights of the parties with respect to distinct matters which have no bearing on other matters left for future determination, or if the matters left for future consideration are collateral to the ultimate rights which have been adjudicated. (*Barnhart v. Barnhart* (1953), 415 Ill. 303, 309, 114 N.E.2d 378, 381; *Mars*, 205 Ill. App. 3d at 1063, 563 N.E.2d at 979.) An order is not final for purposes of review where the amount of the penalty has not been determined. (See *Archer Daniels Midland v. Pollution Control Board* (1986), 149 Ill. App. 3d 301, 303-04, 500 N.E.2d 580, 582.) Where the right to costs arises from the same basis which gives rise to the claim asserted in the litigation, it is not a collateral matter. (*Mars*, 205 Ill. App. 3d at 1064, 563 N.E.2d at 980; *Home State Bank/National Association v. Potokar* (1993), 249 Ill. App. 3d 127, 137, 617 N.E.2d 1302, 1308-09.) Here, the obligation of the offender to pay the penalty and the obligation to pay the costs stem from the same statute. The statute provides, "any person found to have violated any provision of subsection (p) or (q) of Section 21 of this Act shall pay a civil penalty of $500 for each violation of each such provision, plus any hearing costs incurred by the Board and the Agency." Ill. Rev. Stat. 1991, ch. 111$^1$/2, par. 1042(b)(4).

The Board's December 17, 1992, order makes a finding Miller violated section 21(p)(1) of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1991, ch. 111$^1$/2, par. 1021(p)(1)). Thus, the Board was required, by the terms of the statute, to assess a $500 fine *and* hearing costs. The costs in this case are not a collateral matter.

The multiple appeals filed by Miller were necessitated by the Board's bifurcation of the proceedings and entry of two "final" orders in this case. Had the Board entered only one final order, only one appeal (filed at the time of the third appeal in this case) would have been necessary. All of the issues raised in the first and third appeals in this case could have been raised in this single appeal. After oral argument on the first appeal, and prior to the completion of the briefing process on the third appeal, we consolidated these two cases. The consolidation occurred with the agreement of the parties and in order to avoid any prejudice to Miller as the result of the Board's bifurcation of the proceedings.

## III. BIFURCATION OF THE PROCEEDINGS

■ Miller contends the Board exceeded its authority by bifurcating the administrative citation proceeding. An administrative agency has only those powers specifically granted to it by the legislature. (*Chemed Corp. v. State* (1989), 186 Ill. App. 3d 402, 410, 542 N.E.2d 492, 497.) In section 31.1(d)(2) of the Act the legislature provided:

"If, based on the record, the Board finds that the alleged violation occurred, it shall adopt a final order which shall include the administrative citation and findings of violation as alleged in the citation, and shall impose the penalty specified in subdivision (b)(4) of Section 42." (Ill. Rev. Stat. 1991, ch. 111½, par. 1031.1(d)(2).)

Subsection (b)(4) of section 42 of the Act, previously quoted, provides for a civil penalty of $500 for each violation plus any hearing costs incurred by the Board and the agency. Ill. Rev. Stat. 1991, ch. 111½, par. 1042(b)(4).

We decline to construe section 31.1(d)(2) of the Act to require the "final order" be final only as to the imposition of the penalty and not dispositive of the issue of costs. Such a construction would result in the necessity of multiple appeals. Our legislature has not provided for bifurcated means of appealing administrative decisions. (*City of Wood Dale v. Illinois State Labor Relations Board* (1988), 166 Ill. App. 3d 881, 892, 520 N.E.2d 1097, 1103-04.) We find the Board is required to enter a single final order, including both the imposition of the civil penalty *and* assessment of costs. The result of the Board's bifurcation of the administrative citation proceedings, the entry of two "final" orders, was improper.

The Board argues it has the authority to bifurcate administrative citation proceedings by virtue of one of its own regulations. The legislature has authorized the adoption of procedural rules and regulations by the Board. (Ill. Rev. Stat. 1991, ch. 111½, pars. 1005(b), 1026.) One of the regulations the Board has adopted provides:

"In the interest of convenient, expeditious, and complete determination of claims, the Board may consolidate or sever enforcement, variance, permit or other adjudicative claims involving any number of parties, and may order additional parties to be brought in ***." (35 Ill. Adm. Code § 103.141 (1992).)

The Board contends the authority to "sever enforcement" proceedings permits it to bifurcate administrative citation proceedings and enter two "final orders." We disagree.

The procedural regulations adopted by the Board cannot contradict the legislative provisions which require the filing of a single final order. The bifurcation of administrative citation proceedings does not further the interests of convenience and expediency. Rather, it inconveniences both the parties and the court with multiple appeals. Instead of expediting the matter, the bifurcation of the administrative citation proceedings may actually result in delay.

■ We must determine the effect of the improper bifurcation. Miller contends the Board had no authority to bifurcate the proceedings, so the second "final order," which assessed costs, is void. Miller's argument is premised on the principle that agency action which exceeds its authority is void. (*Chemed*, 186 Ill. App. 3d at 410, 542 N.E.2d at 497.) The principle is correct, but its application to this case does not require us to find the order assessing costs is void. The Board's action which exceeded its authority was not the assessment of the costs, but the styling of the first order in this case as a "final" order. The Board has the express authority to assess hearing costs (Ill. Rev. Stat. 1991, ch. 111½, par. 1042(b)(4)), and the assessment of these costs was not void merely because the Board called the order in which costs were assessed its second "final" order.

## IV. CONSTITUTIONAL ARGUMENTS

■ Miller raises several constitutional arguments. Miller has waived these arguments due to his failure to raise them during the administrative hearing. Failure to object in the administrative proceeding constitutes waiver of the right to assert an issue on appeal. (See *Waste Management of Illinois, Inc. v. Pollution Control Board* (1988), 175 Ill. App. 3d 1023, 1039, 530 N.E.2d 682, 695.) They also fail if considered on the merits.

We reject Miller's argument the administrative citation procedure violates the separation of powers principle because it allows the Board to act in a judicial capacity without providing adequate standards and guidelines. The legislature may authorize an administrative agency to act in a quasi-judicial role without offending the separation of powers principle. (*City of Waukegan v. Pollution Control*

*Board* (1974), 57 Ill. 2d 170, 182, 311 N.E.2d 146, 152.) Where the legislature permits the administrative agency to exercise discretion, for example, in determining the amount of a monetary penalty to be assessed, the legislature must also provide adequate standards and guidelines which the agency must follow in the exercise of the discretion. If adequate standards and guidelines are not set forth by the legislature, the legislative provision authorizing the exercise of discretion will run afoul of the separation of powers principle. (See *Southern Illinois Asphalt Co. v. Pollution Control Board* (1975), 60 Ill. 2d 204, 208-09, 326 N.E.2d 406, 408-09; *Waukegan*, 57 Ill. 2d at 182-83, 311 N.E.2d at 152.) Since the Board, in an administrative citation proceeding, has been granted *no discretion* in determining the *amount* of the penalty to be assessed, but imposes an established fine, standards and guidelines are unnecessary.

We reject Miller's argument the administrative citation process violates the due process clause because it prevents the Board from considering evidence in mitigation or assessing a lesser penalty. Miller notes section 31.1 of the Act (Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, par. 1031.1), unlike section 33 of the Act (Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, par. 1033), does not permit the court to consider enumerated factors in determining whether a violation exists and what sanction should be imposed.

Enforcement of the Act may be initiated by one of two methods. A formal complaint may result in penalties of up to $50,000. (See Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, pars. 1031, 1033, 1042(a).) In assessing this penalty, the Board considers factors such as the duration and gravity of the violation, occurrence of previous violations, presence or absence of diligence in attempting to comply with the Act, and the amount of the penalty required to deter future violation of the Act and encourage voluntary compliance with the Act by the violator and others. Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, par. 1042(h).

Alternatively, enforcement of the Act may occur through an administrative citation proceeding, as set forth in section 31.1 of the Act. Administrative citation proceedings are limited to minor violations of the Act, such as open dumping resulting in the occurrence of litter. Unlike the potentially hefty penalties imposed for violations determined under the complaint procedure set forth in sections 31 and 33 of the Act (Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, pars. 1031, 1033), the penalty assessed in an administrative citation proceeding is only $500. Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, pars. 1031.1(d)(2), 1042(b)(4).

The administrative citation proceeding is to the Act as traffic citations are to the body of criminal law. Given the nature of the

violations encompassed in the administrative citation proceedings, many of the factors set forth in sections 33(c) and 42(h) of the Act (Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, pars. 1033(c), 1042(h)) are not relevant. Due to the minimal nature of the penalty, consideration of these factors is not necessary.

We also reject Miller's argument the administrative citation procedure violates the equal protection clause (U.S. Const., amend. XIV) because it is inapplicable to sanitary landfills operated by units of local government solely for the purpose of disposing of water and sewage treatment plant sludges. This legislation does not operate to the disadvantage of a suspect classification or infringe upon a fundamental right; so, to be constitutional, it must simply bear a rational relationship to a legitimate governmental interest. (*Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 368, 483 N.E.2d 1245, 1250.) Miller has not demonstrated the classification is not rationally related to a legitimate governmental interest. (See *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 311, 319 N.E.2d 782, 786.) Moreover, under sections 31.1(f) and 21(o) of the Act (Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, pars. 1031.1(f), 1021(o)), proceedings for the violation of sections 21(o), (p), and (q) of the Act (Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, pars. 1021(o), (p), (q)) by units of local government operating sanitary landfills for the purpose of disposing of water and sewage treatment plant sludges shall not be brought *by administrative citation*. It does not, however, preclude action against these landfills for violations of sections 21(o), (p), and (q) of the Act by filing a *complaint* pursuant to section 31.

Miller's argument the term "litter" is unconstitutionally vague is similarly unconvincing. At the hearing, Miller conceded there was litter on his property. It would be incongruous to allow an individual to assert he should not be penalized under a statute prohibiting the causation of litter, because the term "litter" is unconstitutionally vague, when the individual had a sufficient understanding of the term to concede, at the hearing, litter did exist on his property.

A person of common intelligence can understand the term "litter." The articles on Miller's property fall squarely within the statute's proscription. (See *People v. Bowen* (1993), 241 Ill. App. 3d 608, 616-17, 609 N.E.2d 346, 354-55.) In *Village of Worth v. Watson* (1992), 233 Ill. App. 3d 974, 976, 599 N.E.2d 967, 969, the village filed a complaint alleging, *inter alia*, the defendants allowed the storing of junk automobiles or trucks, in violation of a municipal ordinance. The defendants alleged the term "junk" was vague. (*Worth*, 233 Ill. App. 3d at 977, 599 N.E.2d at 969.) The appellate court noted in the

absence of a statutory definition of a term, the plain and ordinary meaning of the word is to be used. Rejecting the argument the term "junk" was unconstitutionally vague, the court found the plain and ordinary meaning of "junk" was material of little or no value, such as old metal, glass, or paper. (*Worth*, 233 Ill. App. 3d at 982, 599 N.E.2d at 973.) "Litter" like "junk" is capable of being understood by a person of common intelligence. Given its ordinary meaning, "litter" refers to material of little or no value which has not been properly disposed of. The examples of litter set forth in the Litter Control Act (Ill. Rev. Stat. 1991, ch. 38, par. 86—1 *et seq.*) provide additional guidance.

Miller also contends the photographs of the litter on his property ought to have been suppressed, as Wood's inspection of his property constituted an unreasonable search in violation of the fourth amendment (U.S. Const., amend. IV), because Wood did not obtain an administrative search warrant prior to the inspection. Miller has the burden of establishing there was a search and the search was illegal. (*Village of Bridgeview v. Slominski* (1979), 74 Ill. App. 3d 1, 5, 392 N.E.2d 641, 644.) Wood's observation of the litter on Miller's property from the road and his later entry upon the property to photograph the litter did not constitute an unreasonable search.

Wood observed the litter on Miller's property from the road. This was not a search because no justified expectation of privacy is present when the incriminating objects or activities are readily noticable to persons on neighboring lands. (1 W. LaFave, Search & Seizure § 2.3(c), at 391 (2d ed. 1987).) Wood then entered the land to photograph the litter. Entry upon land to photograph conditions visible from neighboring property is not an unreasonable search and seizure. *Slominski*, 74 Ill. App. 3d at 5-6, 392 N.E.2d at 644-45.

We also reject Miller's argument the administrative citation process violates the due process clause because imposing costs upon individuals who request a hearing and unsuccessfully defend against the citation has a chilling effect on the exercise of constitutional rights. This argument has been rejected by both the United States and Illinois Supreme Courts. (*Fuller v. Oregon* (1974), 417 U.S. 40, 54, 40 L. Ed. 2d 642, 655, 94 S. Ct. 2116, 2125; *People v. Estate of Scott* (1977), 66 Ill. 2d 522, 526, 363 N.E.2d 823, 825.) Requiring unsuccessful respondents to an administrative citation to pay hearing costs does not violate the due process clause. The purpose of the statute is not to penalize respondents for exercising their right to request a hearing. Rather, the statute furthers the State's legitimate interest in recouping some of the costs of the administrative citation process.

## V. AMOUNT OF COSTS

Miller alleges the Board abused its discretion in assessing hearing costs of $952.25. The costs were as follows: attorney fees ($60), expert witness fee ($20), preparation and mailing of documents ($10), court reporter's attendance fee ($200), travel time ($126), mileage ($49.25), transcript (33 pages at $4 per page equals $132), hearing officer's appearance fee ($300), travel expenses ($45), and parking fee ($10). These fees were assessed based on affidavits submitted by the County and the Board. No explanation as to the amount of the costs for the court reporter and hearing officer was offered. The Board made no finding with respect to the propriety of the costs or their reasonableness, but merely assessed costs in the total amount claimed. One member of the Board dissented from the majority opinion with respect to the amount of costs assessed because he believed *more* costs, including overhead and administrative expenses, should have been assessed. *Sangamon County v. Miller* (Feb. 4, 1993), _____ Ill. PCB Op. 92—37 (Meyer, dissenting) (hereinafter Meyer).

■ The Board and the County contend Miller has waived consideration of this issue due to his failure to object in the proceedings below. As a general rule, failure to object in the administrative proceeding constitutes waiver of the right to assert an issue on appeal. (See *Waste Management*, 175 Ill. App. 3d at 1039, 530 N.E.2d at 695.) Miller was granted an opportunity to file objections to the costs with the Board, but elected not to do so. However, the waiver rule is an admonition to litigants, not a limitation on the jurisdiction of the reviewing court. (*American Federation of State, County & Municipal Employees, Counsel 31 v. County of Cook* (1991), 145 Ill. 2d 475, 480, 584 N.E.2d 116, 118.) The court may exercise its discretion and elect to consider the merits of arguments which were not raised in the original proceedings when an issue of public importance is presented (*In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 279, 545 N.E.2d 731, 733) or the issue is likely to recur. (*E&E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 39, 481 N.E.2d 664, 666.) Both circumstances are present here.

■ The Board's assessment of *all* costs requested by the complainant and Board, without proof of reasonableness, and the assessment of costs with respect to items not properly included in "hearing costs" are likely to recur. In his reply brief, Miller cites to three recent cases in which the Board imposed a $500 penalty and assessed hearing costs in excess of $500. (See *Sangamon County v. Hsueh*, 476 Envtl. Reg. 9 (Nov. 3, 1993) (hearing costs of $1,304.25 assessed); *County of Ogle v. City of Rochelle*, 473 Envtl. Reg. 8 (Aug. 4, 1993) (hearing

costs of $1,220.03 assessed); *St. Clair County v. Alexander*, 476 Envtl. Reg. 9 (Nov. 3, 1993) (hearing costs of $558.99 assessed).) It is also of public interest because the prospect of incurring liability for unreasonable costs may prevent citizens with legitimate disputes from requesting a hearing when served with an administrative citation.

The Board may be increasing the scope of what constitutes "hearing costs." According to the dissenting opinion, the Board has traditionally included only the travel expenses of complainant attorney, the hearing officer's fee, and the court reporter's fee in "hearing costs." (Meyer at 1.) In this case, attorney fees, a witness fee for the complainant employee, document preparation costs, travel and parking expenses of the hearing officer, and travel expenses of the court reporter were also included. The dissenting member encourages the inclusion of even more items in "hearing costs," including overhead and administrative costs. (Meyer at 1.) We choose to exercise our discretion and to consider the merits of Miller's argument regarding the amount of the costs assessed.

An administrative order will not be disturbed on review unless it is clearly arbitrary, capricious or unreasonable. (*City of Freeport v. Pollution Control Board* (1989), 187 Ill. App. 3d 745, 750, 544 N.E.2d 1, 4.) The Board's order in this case is unreasonable as it assesses costs not properly included in "hearing costs" and assesses excessive costs without any explanation.

The legislature has authorized the assessment of "any hearing costs incurred by the Board and the Agency" upon those individuals found, after a hearing, to have violated section 21(p) or (q) of the Act. (Ill. Rev. Stat. 1991, ch. 111¹/₂, par. 1042(b)(4).) Absent a statute or contract to the contrary, attorney fees and the ordinary expenses and burdens of litigation are *not* recoverable by the prevailing party. (*House of Vision, Inc. v. Hiyane* (1969), 42 Ill. 2d 45, 51-52, 245 N.E.2d 468, 472.) Statutes permitting the recovery of costs from the unsuccessful litigant are in derogation of the common law and must be strictly construed. Litigants may not be allowed to recover as costs items other than those specified in the statute authorizing such awards. *Calcagno v. Personalcare Health Management, Inc.* (1991), 207 Ill. App. 3d 493, 502, 565 N.E.2d 1330, 1336.

■ It was improper for the Board to include the County's attorney fees in the hearing costs. Only those items designated by statute may be allowed as costs, and attorney fees are " 'not of that character.' " (*State Farm Fire & Casualty Co. v. Miller Electric Co.* (1992), 231 Ill. App. 3d 355, 359-60, 596 N.E.2d 169, 171-72, quoting *Meyer v. Marshall* (1976), 62 Ill. 2d 435, 442, 343 N.E.2d 479, 483.) Statutes which provide for the award of attorney fees do so by specific language.

(*State Farm*, 231 Ill. App. 3d at 360, 596 N.E.2d at 172.) No specific language appears in section 42(b)(4) of the Act authorizing the award of attorney fees. It was error for the court to include the County's attorney fees in the hearing costs.

Although witness fees may be included in "costs," it was improper to tax a witness fee to Miller for the appearance of the County officer *responsible* for initiating the administrative citation procedure. Witness fees, including expert witness fees, are properly included in "costs." (See *Commissioners of Lincoln Park v. Schmidt* (1946), 395 Ill. 316, 320, 69 N.E.2d 869, 872.) Had the County actually incurred witness fees, it would have been entitled to recover them as "hearing costs." However, a County employee, employed for the purpose of inspecting property and issuing administrative citations, should not receive a witness fee for testifying against the respondent to an administrative citation issued by that employee.

This may be analogized to the issue of whether a police officer ought to receive a witness fee for testifying against a person he arrested. An Attorney General opinion suggests police officers are not entitled to witness fees for testifying against the accused. (1978 Ill. Att'y Gen. Op. 102.) Specifically, the Attorney General noted " 'a person accepting a public office, with a fixed salary, is bound to perform the duties of the office for the salary. He cannot legally claim additional compensation for the discharge of such duties.' " (1978 Ill. Att'y Gen. Op. at 103, quoting *Anderson v. City of Rockford* (1945), 324 Ill. App. 648, 650, 59 N.E.2d 327, 328.) The duty to testify against the arrested person is an implied duty of a police officer. Since participation in the criminal proceedings is included in the duties of a police officer, the officer is not entitled to receive witness fees. 1978 Ill. Att'y Gen. Op. 102.

Wood is a solid waste inspector employed by the County Department of Public Health. His duty is to inspect sites in the County and enforce the Act. Based upon Wood's inspection of Miller's property, an administrative citation was issued. Wood's duties include the implied duty to testify. Wood is not entitled to a witness fee.

The fee for "preparation and mailing of documents" should be reduced to the cost of mailing the administrative citation to Miller. A fee for the service of the administrative citation by mailing is akin to service of process by mail. The service of process by mail is includable in "costs." (Ill. Rev. Stat. 1991, ch. 110, par. 5—122.) The record reflects the County served the administrative citation upon Miller by certified mail. Thus, the County was entitled to claim the cost of sending the citation by certified mail. The expense incurred in the preparation of the documents is not, however, recoverable as "costs."

Reasonable court reporter's fees may properly be included in "hearing costs." In *In re Petition of Sullivan* (1985), 134 Ill. App. 3d 455, 463, 480 N.E.2d 1283, 1290, the court found a court reporter's fees could be taxed as costs under a statute permitting "the costs may be taxed as to the court seems just." (See Ill. Rev. Stat. 1991, ch. 110, par. 2—701(e).) However, the amount of the fee in this case was excessive and unreasonable. The party asserting a claim for costs has the burden of establishing the reasonableness of the costs. (See *Decatur Imaging Center v. Ames* (1992), 237 Ill. App. 3d 959, 965, 608 N.E.2d 1198, 1202.) In *Ames*, we reversed an assessment of collection costs where there was no evidence presented the fee for the collection service was reasonable. *Ames*, 237 Ill. App. 3d at 965, 608 N.E.2d at 1202.

The fees established by the legislature and supreme court for court reporters employed by the judiciary are helpful in examining the reasonableness of the court reporter's fee in this case. A part-time court reporter employed by the State is to be paid not less than $12 nor more than $60 per half day. (Ill. Rev. Stat. 1991, ch. 37, par. 658(a).) Unless provided otherwise by the supreme court, court reporters employed by the judiciary may not charge in excess of $0.25 per 100 words for making transcripts. (Ill. Rev. Stat. 1991, ch. 37, par. 655.) The supreme court has provided charges for the preparation of a transcript shall be on a per-page basis at the rate of $1.80 per page for the original on regular delivery and $0.50 per page for copies; or $2 per page for the original on daily delivery (orders for which must be approved by a judge) and $0.75 per page for copies. (Administrative Office of the Illinois Courts, Uniform Schedule of Charges for Official Court Reporters' Transcripts (1987).) Using these statutes and the uniform schedule as guidelines in assessing reasonableness, the court reporter's attendance fee of $200 and the $4-per-page charge for the production of a transcript are excessive.

The court reporter's travel expenses should not have been taxed to Miller. The Board included the court reporter's travel expenses of $175.25 in "hearing costs." The only explanation for the costs was "court reporter from Peoria used." No explanation of why a court reporter from Peoria was used was given. In the absence of evidence there were no available court reporters in Sangamon County, or some other explanation of why these costs were reasonably incurred, they should not have been included in "hearing costs."

The Board also offered no explanation regarding why a hearing officer was paid $300 to preside over a 30- to 60-minute hearing. Since the Board included items which are not properly included in "hearing costs" and assessed excessive costs, we reverse the order

requiring Miller to pay costs of $952.25, and remand for the assessment of proper and reasonable costs.

## VI. CONCLUSION

The Board did not have the authority, on bifurcating the administrative citation proceedings, to purport to make the first (as well as the second) order "final" for purposes of appeal; however, improper bifurcation of the proceedings does not render void the order assessing costs. We do find the Board abused its discretion in assessing costs of $952.25. The finding Miller violated the Act is affirmed; the order requiring Miller to pay costs of $952.25 is reversed and remanded.

No. 4—93—0047, Affirmed.
No. 4—93—0585, Reversed and remanded.

LUND and GREEN, JJ., concur.